# United States Court of Appeals for the Eleventh Circuit

---

KARON WARREN; DEBORAH KAPLAN;
KIMBERLY KAPLAN; and JENNIFER SINGER,

*Plaintiffs-Appellants*,

v.

U.S. DEPARTMENT OF LABOR; ACTING SECRETARY OF LABOR,
U.S. DEPARTMENT OF LABOR; ADMINISTRATOR JESSICA LOOMAN, AS THE
HEAD OF THE U.S. DEPARTMENT OF LABOR'S WAGE AND HOUR DIVISION;
and U.S. DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,

*Defendants-Appellees*.

---

On Appeal from the United States District Court for the Northern
District of Georgia | No. 2:24-cv-00007 | Hon. Richard W. Story

## BRIEF FOR BUSINESS TRADE ASSOCIATIONS AS *AMICI CURIAE* IN SUPPORT OF APPELLANTS

MAURICE BASKIN
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, N.W.
Washington, D.C.  20006
(202) 772-2526
mbaskin@littler.com

*Counsel for Amici Curiae*

EUGENE SCALIA
  *Counsel of Record*
JASON J. MENDRO
ANDREW G.I. KILBERG
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
escalia@gibsondunn.com

*Counsel for Amicus Curiae
Financial Services Institute, Inc.*

*(Additional counsel listed on inside cover)*

Stephanie A. Maloney
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, D.C. 20062
(202) 463-5337
smaloney@uschamber.com

*Counsel for Amicus Curiae*
*Chamber of Commerce of the*
*United States of America*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned counsel of record certifies that, in addition to the entities listed on the parties' Certificates of Interested Persons, the following individuals, law firms, and entities have an interest in the outcome of this appeal:

1. American Trucking Associations

2. Associated Builders and Contractors, Inc.

3. Associated Builders and Contractors of Southeast Texas, Inc.

4. Baskin, Maurice

5. Chamber of Commerce of the United States of America

6. Coalition for Workforce Innovation

7. Financial Services Institute, Inc.

8. Kilberg, Andrew G.I.

9. Maloney, Stephanie A.

10. Mendro, Jason J.

11. National Federation of Independent Business, Inc.

12. National Retail Federation

13. Scalia, Eugene

14.    Von Bokern, Jordan L.

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that each of *amici curiae* the Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations, is a nonprofit, tax-exempt organization with no parent corporation.  No publicly held company has 10% or greater ownership in any of these organizations.

Pursuant to Eleventh Circuit Rule 26.1-3(b), the undersigned counsel of record certifies that *amici* are not aware of any publicly traded company or corporation that has an interest in the outcome of this case or appeal.

Dated:  January 9, 2025          Respectfully Submitted,

                                  */s/ Eugene Scalia*
                                 EUGENE SCALIA
                                   *Counsel of Record for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................ C-1

TABLE OF CONTENTS ........................................................... i

TABLE OF CITATIONS ............................................................ ii

INTEREST OF *AMICI CURIAE* ................................................. 1

STATEMENT OF THE ISSUE ................................................... 6

SUMMARY OF THE ARGUMENT ............................................ 6

ARGUMENT ........................................................................ 10

I.   The 2024 Rule's "Inherent Unpredictability" Does Not Deprive Plaintiffs of Standing. ...................................... 10

    A.   The 2024 Rule Predictably and Intentionally Injures Plaintiffs. ............................................................... 11

    B.   The District Court Erred in Finding No Standing. ............. 16

    C.   The District Court's Reasoning Is Incompatible with Bedrock Principles of Administrative Law. ......................... 19

II.  At Minimum, the District Court's Ruling Should Be Confined to the Facts of this Case. .................................. 22

CONCLUSION ..................................................................... 25

CERTIFICATE OF COMPLIANCE ........................................... 27

CERTIFICATE OF SERVICE ................................................... 28

# TABLE OF CITATIONS

**Page(s)**

## Cases

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
925 F.3d 1205 (11th Cir. 2019)............................................................ 12

*A.M.P. v. Dep't of Homeland Sec.*,
2024 WL 4524545 (E.D. Mich. Sept. 30, 2024) .................................. 16

*A.M.P. v. Dep't of Homeland Sec.*,
2025 WL 18641 (E.D. Mich. Jan. 2, 2025) ......................................... 16

*Ass'n of Priv. Sector Colls. & Univs. v. Duncan*,
681 F.3d 427 (D.C. Cir. 2012) ............................................................. 23

*Bennett v. Spear*,
520 U.S. 154 (1997) ............................................................................. 13

*Bowen v. First Fam. Fin. Servs., Inc.*,
233 F.3d 1331 (11th Cir. 2000)............................................................ 18

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012) ....................................................................... 19, 20

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ......................................................................... 18, 19

*Corbett v. TSA*,
930 F.3d 1225 (11th Cir. 2019)............................................................ 18

*CWI v. Su*,
2024 WL 2108472 (5th Cir. Feb. 19, 2024) ..........................................5

*CWI v. Walsh*,
2022 WL 1073346 (E.D. Tex. Mar. 14, 2022).......................... 4, 5, 8, 23

*Davis v. FEC*,
554 U.S. 724 (2008) ............................................................................. 13

# TABLE OF CITATIONS
*(continued)*                                                              **Page(s)**

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) .................................... 10, 12, 13, 14, 15, 17, 18, 19

*Emp. Sols. Staffing Grp. II, LLC v. Off. of Chief Admin.*
  *Hearing Officer*, 833 F.3d 480 (5th Cir. 2016) ..................................... 19

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ............................................................. 21

*Encino Motorcars, LLC v. Navarro*,
  584 U.S. 79 (2018) .............................................................. 15

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ............................................................. 19

*Getty Oil Co v. Clark*,
  614 F. Supp. 904 (D. Wyo. 1985) ........................................... 16

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ............................................................. 22

*Idaho Power Co. v. FERC*,
  312 F.3d 454 (D.C. Cir. 2002) ......................................... 15, 16

*Islam v. Sec'y, Dep't of Homeland Sec.*,
  997 F.3d 1333 (11th Cir. 2021) ........................................... 20

*Johnson v. EEOC*,
  1995 WL 374058 (N.D. Ill. June 21, 1995) ........................... 25

*Johnson v. United States*,
  576 U.S. 591 (2015) ............................................................. 20

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) ............................................... 8, 21, 22

# TABLE OF CITATIONS
*(continued)* <span style="float:right">**Page(s)**</span>

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992).............................................................12, 23

*Massachusetts v. EPA,*
  549 U.S. 497 (2007).................................................................14

*Perez v. Mortg. Bankers Ass'n,*
  575 U.S. 92 (2015)...................................................................21

*Rio Grande Pipeline Co. v. FERC,*
  178 F.3d 533 (D.C. Cir. 1999)...........................................15, 16

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
  578 U.S. 590 (2016).................................................................25

*United States v. Texas,*
  599 U.S. 670 (2023).................................................................14

*Wilding v. DNC Servs. Corp.,*
  941 F.3d 1116 (11th Cir. 2019)...............................................14

*Worthy v. City of Phenix City,*
  930 F.3d 1206 (11th Cir. 2019)...............................................12

**Statutes**

29 U.S.C. § 259.............................................................................24

Cal. Lab. Code § 2778(b)(2)(J)....................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ...............................................................12

Neil Gorsuch & Janie Nitze, *Over Ruled:*
  *The Human Toll of Too Much Law* (2024)...........................20

# TABLE OF CITATIONS
*(continued)* **Page(s)**

29 C.F.R. § 795.100 ................................................................... 24

86 Fed. Reg. 1168 (Jan. 7, 2021) ................................. 6, 7, 8, 24

89 Fed. Reg. 1638 (Jan. 10, 2024) ........................... 9, 15, 23, 24

# INTEREST OF *AMICI CURIAE*[1]

*Amici* are trade organizations that represent and advocate for a diverse array of interests across a range of industries in the American economy, including independent workers who prize the flexibility and freedom of non-traditional work arrangements.

**The Chamber of Commerce of the United States of America** is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the Nation's business community.

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel or party contributed money intended to fund its preparation or submission. No person other than *amici*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

**The Coalition for Workforce Innovation (CWI)** brings together diverse stakeholders representing worker advocates, small business start-ups, entrepreneurs, technology companies, and traditional businesses. CWI supports efforts to modernize federal work policy, including by adopting a clear, modern definition of independent contractor status to ensure that opportunities for independent workers are not restricted.

**Associated Builders and Contractors, Inc. (ABC)** is a national construction industry trade association representing more than 23,000 members. Founded on the merit shop philosophy, ABC and its 67 chapters help members develop people, win work, and deliver that work safely, ethically, and profitably for the betterment of the communities in which ABC and its members work. ABC's members include all specialties within the construction industry. Independent contractors are essential to many aspects of the construction industry.

**Associated Builders and Contractors of Southeast Texas, Inc.** is a trade association of 157 construction contractors and related firms operating in Southeast Texas and around the country. It is a separately incorporated affiliate of the national construction industry

trade association ABC.  Independent contractors are essential to many aspects of the construction industry.

**Financial Services Institute, Inc. (FSI)** is a trade association that represents independent financial advisors and independent financial services firms, which have been an important and active part of the lives of American investors for more than 40 years.  FSI's members include independent financial services firms that provide business support to independent financial advisors and supervise their business practices.  Due to these unique business models, FSI's member firms and their affiliated financial advisors depend on the flexibility of independent contractor classification.

**National Federation of Independent Business, Inc. (NFIB)** is a nonprofit association representing small and independent businesses. NFIB protects and advances the ability of Americans to own, operate, and grow their businesses and ensures that the government hears the voice of small business as it formulates public policies.  Small businesses seek the services of an efficient mix of employees and independent contractors to help grow their business, create jobs, control costs, and furnish goods and services at competitive prices.

**National Retail Federation (NRF)** is the world's largest retail trade association, and passionately advocates for retail to thrive. For over a century, NRF has been the voice of retail worldwide, educating, inspiring, and communicating the powerful impact retail has on local communities and global economies. Retailers maintain a wide range of relationships with independent contractors.

**American Trucking Associations (ATA)** is the voice of the trucking industry that America depends on most to move our Nation's freight. ATA is a federation that has represented the industry for almost 90 years. Workforce issues are critical for ATA and its members, and independent contractors are a vital part of that workforce.

\* \* \*

*Amici* supported the independent contractor rule issued by the Department of Labor (DOL) in 2021 because it provided needed clarity for both workers and companies. When DOL later attempted to delay and withdraw the 2021 Rule, *amici* filed suit and secured a ruling vacating those actions as arbitrary and capricious and otherwise violative of the Administrative Procedure Act (APA). *CWI v. Walsh*, 2022

WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated as moot on other grounds sub nom. CWI v. Su*, 2024 WL 2108472 (5th Cir. Feb. 19, 2024).

The 2024 Rule attempts to withdraw the 2021 Rule once again, and to replace it with an unprecedented, unlawful standard that contravenes governing precedent and rests on badly flawed reasoning. After vacating DOL's appeal of the first district court decision as moot in light of adoption of the 2024 Rule, the Fifth Circuit remanded *amici*'s suit to the district court, where *amici* have filed a motion for summary judgment seeking vacatur of the 2024 Rule based on its serious legal deficiencies. Dkt. 52, *CWI v. Su*, No. 1:21-cv-130 (E.D. Tex. filed Apr. 17, 2024). Briefing on that motion is complete.

Plaintiffs' challenge to the 2024 Rule in this case is important to *amici* and their members because they have a pending challenge to the same Rule and they rely on worker classification standards set forth in existing precedent and the 2021 Rule. *Amici* offer this brief to explain that the district court erred in holding that Plaintiffs lack standing to challenge the Rule on the theory that the Rule's effect on Plaintiffs' classification as independent contractors, and hence their livelihoods, is "inherently unpredictable." App. 44. At minimum, this Court's ruling

should focus on the facts and particular question of standing presented in this case, mindful that plaintiffs in parallel litigation have distinct grounds for standing. Even on its own terms, the district court's reasoning does not foreclose challenges by other parties—such as companies that are the direct objects of DOL's regulation and the trade associations that represent their interests.

## STATEMENT OF THE ISSUE

Whether the district court erred in holding that Plaintiffs, who are four independent contractors, lack standing to challenge the 2024 Rule.

## SUMMARY OF THE ARGUMENT

This case is one of several ongoing suits challenging DOL's unlawful attempt to repeal and replace its own recently promulgated 2021 Rule addressing the proper classification of workers under the Fair Labor Standards Act (FLSA), a matter of nationwide economic importance.

In 2021, after notice and extensive comments by interested parties, DOL adopted a rule with a clear and understandable test to help regulated parties determine who is an employee rather than an independent contractor for purposes of the FLSA. 86 Fed. Reg. 1168

(Jan. 7, 2021).  Drawing on decades of precedent delineating a five-factor "economic reality" test to interpret this statute, the 2021 Rule identified two "'core' factors—the nature and degree of the worker's control over the work and the worker's opportunity for profit or loss"—that "typically carry greater weight in the analysis" because they "drive at the heart of what is meant by being in business for oneself." *Id.* at 1176, 1196.  DOL demonstrated through its exhaustive review of appellate court decisions that when the "control" and "opportunity for profit or loss" factors both pointed toward the same classification for a worker, courts invariably found that to be the correct classification.  DOL concluded that giving primacy to these factors greatly simplified and clarified the application of the five factors historically consulted by the courts, thus increasing compliance and decreasing costs while remaining true to the FLSA's text.

The 2021 Rule also clarified that parties' "actual practice"—that is, the economic reality of a working relationship—"is more relevant than what may be contractually or theoretically possible" for purposes of worker classification.  86 Fed. Reg. at 1203.  Through these and other provisions, DOL explained that the 2021 Rule's "clear articulation will lead to increased precision and predictability in the economic reality

test's application, which will in turn benefit workers and businesses and encourage innovation and flexibility in the economy." *Id.* at 1168.

Just months later, however, DOL repudiated its prior statements and embarked on a dogged campaign to repeal the 2021 Rule, without identifying any change in fact or law justifying such an about-face—a classic example of the government-inflicted "instability in the law," which "leav[es] those attempting to plan around agency action in an eternal fog of uncertainty," that the Supreme Court has recently decried in reining in agency overreach. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2272 (2024); *accord* Tr. of Oral Arg. at 97, *Relentless, Inc. v. Dep't of Com.*, No. 22-1219 (Jan. 17, 2024) (Justice Kavanaugh lamenting these regulatory "shocks to the system"). In 2022, a district court in the Eastern District of Texas vacated DOL's first, hasty attempt to delay and withdraw the 2021 Rule, holding that DOL violated the APA by denying the public a meaningful opportunity to comment on those actions, and by arbitrarily and capriciously failing to consider potential alternatives. *CWI*, 2022 WL 1073346, at *3-20.

Undeterred, DOL tried again. It issued a new rule in 2024 that again attempts to withdraw the 2021 Rule, and also replace the

predictable core-factor framework with a formless, seven-factor totality-of-the-circumstances test that has never been applied by any court, provides woefully little guidance to regulated parties, and is incapable of consistent application. 89 Fed. Reg. 1638 (Jan. 10, 2024); *see id.* at 1742-43 (identifying six enumerated factors, plus unenumerated "[a]dditional factors"). The 2024 Rule suffers all the same flaws as DOL's previous attempt to withdraw the 2021 Rule—and more.

Although the district court in this case did not reach the merits, its reasoning is incompatible with DOL's own defense of the 2024 Rule. The court correctly recognized that "the 2024 Rule's multi-factor test is inherently unpredictable" and "'uncertain[]'" precisely *because* it is a fact-specific, totality-of-the-circumstances test." App. 42, 44. The district court erred, however, in holding that the Rule's unpredictability means Plaintiffs lack standing to challenge it. That holding improperly transformed flaws that make the Rule unlawful on the merits into a jurisdictional shield from Plaintiffs' suit. That reasoning conflicts with longstanding precedent. If affirmed, it risks incentivizing agencies to adopt vague, unpredictable rules to evade legal challenges. That is the polar opposite of sound administrative procedure.

Regardless, nothing in the district court's reasoning forecloses other bases for standing not presented by the individual Plaintiffs here. The district court itself emphasized that these "Plaintiffs are freelance writers seeking engagement, not employers subject to the FLSA's requirements." App. 40-41. Thus, however this Court assesses the standing of the four individual workers who are Plaintiffs here, its analysis should be limited to the facts of this case.

## ARGUMENT

### I. The 2024 Rule's "Inherent Unpredictability" Does Not Deprive Plaintiffs of Standing.

Plaintiffs have standing to challenge DOL's rule because it threatens, directly and by design, the independent-contractor classification on which their livelihoods depend. Longstanding precedent recognizes this kind of "predictable effect of Government action" as a cognizable injury, even where it depends to some degree on "the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). But the district court misapplied precedent and adopted an upside-down standing doctrine that would transform vague regulations' flaws on the *merits* into a jurisdictional shield from suit, contrary to logic and sound administrative procedure.

## A. The 2024 Rule Predictably and Intentionally Injures Plaintiffs.

Plaintiffs are freelance writers and editors whose chosen careers depend on their ability to "operate as independent contractors" free from the FLSA's inflexible restrictions on employer-employee relationships. App. 26; *see* App. 7 ¶¶ 1-2. They brought this lawsuit arguing that the 2024 Rule is unlawful because, among other things, "the 2024 Rule's multi-factor, totality-of-the-circumstances approach diverges from the 2021 Rule's more predictable guidance and 'obscures the line between contractor and employee,'" App. 30, in a manner that "enables" DOL to label essentially "anyone performing services for another company" an "employee" under the FLSA, App. 8 ¶ 5. Plaintiffs allege that they "have already lost job opportunities" due to the "uncertainty created by the 2024 Rule" about the continued legality of their longstanding business models. App. 31. Indeed, in recognition of the fact that freelance writers like Plaintiffs are burdened by the employee classification, the State of California specifically carves them out of its strict "ABC" test, which is heavily tilted toward employee status. *See* Cal. Lab. Code § 2778(b)(2)(J).

Whether or not DOL can defeat this claim on the merits, it should be uncontroversial that Plaintiffs have *at least* sufficiently shown

Article III standing based on a cognizable "injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). At the motion-to-dismiss stage, "'general factual allegations of injury resulting from the defendant's conduct'" are "'sufficient'" to establish standing. *Worthy v. City of Phenix City*, 930 F.3d 1206, 1214 (11th Cir. 2019). Plaintiffs may satisfy this requirement by alleging facts showing "a substantial likelihood that [they] will suffer injury in the future." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210-11 (11th Cir. 2019) (quotation marks omitted).[2]

In particular, the Supreme Court has recently reaffirmed that plaintiffs suing federal agencies can derive standing from "the predictable effect of Government action on the decisions of third parties." *Dep't of Com.*, 588 U.S. at 768. In *Department of Commerce*, several

_____

[2] Rule 12 standards govern the standing issue on this appeal because the court below granted DOL's cross-motion to dismiss under "Fed. R. Civ. P. 12(b)(1)." App. 114. The court declined to reach the parties' "alternative[]" requests for summary judgment on the merits. App. 37; *see* App. 44 (identifying DOL's motion to dismiss as the basis for the court's ruling).

states and private plaintiffs challenged the federal government's decision "to reinstate a question about citizenship on the 2020 census questionnaire." *Id.* at 758; *see id.* at 764. The lower court held that the states had standing because "the reinstatement of a citizenship question would result in noncitizen households responding to the census at lower rates than other groups, which in turn would cause them to be undercounted and lead to many of respondents' asserted injuries," such as a "loss of federal funds." *Id.* at 766-67. The Supreme Court affirmed that holding, agreeing that the "prediction" that plaintiff states would "lose out on federal funds" was "a sufficiently concrete and imminent injury to satisfy Article III." *Id.* at 767. The states' "theory of standing" did "not rest on mere speculation about the decisions of third parties; it relie[d] instead on the predictable effect of Government action on the decisions of third parties." *Id.* at 768.

*Department of Commerce* built on a long line of cases authorizing standing based on "injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997); *see also*, *e.g.*, *Davis v. FEC*, 554 U.S. 724, 734 (2008) (approving standing based on third party's predictable actions where there was "no

indication that [the third party] would forgo" those actions).  This Court has similarly applied *Department of Commerce* to hold that plaintiffs "sufficiently pled" Article III standing where they established "a fair inference" supporting their asserted injury, so long as there not "too many unknowns."  *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019).[3]

Plaintiffs' standing here is even clearer than in *Department of Commerce*.  In that case, the standing theory was arguably "tenuous" because it required an assumption that a third party would act "unlawfully," but the Court was "satisfied" that those unlawful actions were sufficiently "predictable" to support standing.  588 U.S. at 767-68.

No such wrinkle applies here.  The third-party action posited by Plaintiffs—businesses will determine that workers previously classified

---

[3] Although some of the plaintiffs in *Department of Commerce* were states, the Court's standing analysis did not rely on state-specific doctrines such as the "special solicitude" for state plaintiffs recognized in *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007)—which *Department of Commerce* did not cite.  *See United States v. Texas*, 599 U.S. 670, 688-89 (2023) (Gorsuch, J., concurring in the judgment) (discussing *Department of Commerce* and observing that "'special solicitude'" has not "played a meaningful role in th[e] Court's decisions in the years since" *Massachusetts*).  *Department of Commerce*'s reasoning therefore applies equally to private plaintiffs, as confirmed by subsequent cases such as *Wilding*.

as independent contractors must now be reclassified as, or replaced by, employees—is not only uncontroversial, it is the *intended effect* of DOL's rulemaking.  As DOL itself explained, it adopted the 2024 Rule to correct what it perceived as a "greater risk" that the 2021 Rule would result in workers being classified "as independent contractors," and to impose instead an "expansive definition of 'employee" to further the FLSA's putative "'remedial purposes.'"  89 Fed. Reg. at 1639, 1659, 1668 & n.218.[4]  The widespread reclassification of independent contractors that Plaintiffs fear is thus an intended and "predictable effect of Government action," justifying this suit.  *Dep't of Com.*, 588 U.S. at 768.

Other courts have likewise found standing in circumstances similar to Plaintiffs' here.  The D.C. Circuit, for example, has repeatedly "recognized" that an agency "causes an injury that is felt immediately and confers standing" when it disrupts and "replaces" a relatively "certain" *status quo* by inflicting new regulatory "uncertainty."  *Idaho Power Co. v. FERC*, 312 F.3d 454, 460-61 (D.C. Cir. 2002) (citing *Rio*

---

[4] DOL's "flawed" reliance on "remedial purpose" is a reason to vacate the Rule on the merits.  *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018).

*Grande Pipeline Co. v. FERC*, 178 F.3d 533 (D.C. Cir. 1999)). Thus, in *Idaho Power*, the court allowed plaintiff to challenge FERC orders that "preclude[d] it from entering a long-term 10-year contract" that "would have afforded greater certainty," even though the plaintiff could "not prove that FERC's orders will cause any monetary loss." *Id.* at 459-61. Indeed, the court found it "inconceivable" that the plaintiff could "lack standing" in these circumstances. *Id.* at 461. Other cases are in accord. *E.g.*, *A.M.P. v. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2024 WL 4524545, at *4 (E.D. Mich. Sept. 30, 2024) ("While economic uncertainty … may be hard to quantify, it is enough to allege injury."), *amended on other grounds*, 2025 WL 18641 (E.D. Mich. Jan. 2, 2025); *Getty Oil Co. v. Clark*, 614 F. Supp. 904, 915 (D. Wyo. 1985) ("[B]usiness-related economic uncertainty constitutes sufficient 'hardship' to give [plaintiff] standing."). The same reasoning supports standing here.

## B. The District Court Erred in Finding No Standing.

The district court's contrary ruling is erroneous and internally inconsistent. Indeed, the court effectively *agreed* with Plaintiffs' central merits argument that the 2024 Rule inflicts "'significant uncertainty'" by destroying workers' ability to rely on "the clarity and predictability

afforded by the 2021 Rule's core factor" framework for the FLSA independent-contractor classification on which Plaintiffs' chosen careers depend. App. 30-31 (quoting App. 19 ¶ 48). Because that "predictable effect of Government action" *is* an Article III injury, the court should have proceeded to "consider the merits of [Plaintiffs'] claims." *Dep't of Com.*, 588 U.S. at 768.

Instead, the district court took a wrong turn, holding that the 2024 Rule's removal of prior regulatory certainty *insulated* the Rule from Plaintiffs' challenge. The court concluded that the 2024 Rule's "inherently unpredictable" test for worker classification rendered Plaintiffs' injuries impermissibly "hypothetical," "conjectural," and "speculative." App. 44. At the same time, the court acknowledged the possibility that, "down the road," a court could find that "Plaintiffs qualified as employees" under "the 2024 Rule's fact-specific, totality-of-the-circumstances test," which the court reasoned would make their harm no longer speculative. App. 41, 44.

The district court's ruling contravenes *Department of Commerce* and other cases finding predictable third-party effects sufficient for standing to challenge government action. The court relied on a handful

of distinguishable cases instead. The court relied primarily (App. 42-44) on *Corbett v. TSA*, 930 F.3d 1225 (11th Cir. 2019), which rejected a *pro se* plaintiff's standing to challenge TSA's new "*random*[]" screening policy based on speculative fears that he "*might* be designated" for that process. *Id.* at 1231, 1236. But *Corbett* merely applied established precedent in holding that the plaintiffs' injury was "too speculative" because he did not even claim that he "ha[d] ever been subjected to" the complained-of screening or that he was at any "heightened" risk of screening in the future. *Id.* at 1234-35 (citing *Bowen v. First Fam. Fin. Servs., Inc.*, 233 F.3d 1331, 1333 (11th Cir. 2000)). *Corbett*, which was decided after *Department of Commerce*, did not cite that precedent or disturb its application to the circumstances present here, where Plaintiffs have plausibly alleged both past and future injury from DOL's action. *See supra*, at 11-16.

The district court additionally relied (App. 43-44) on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), which also is inapposite. *Lyons* rejected standing to seek prospective relief from a police chokehold policy because the plaintiff offered "no more than speculation to assert either that Lyons himself will again be" subjected to excessive police force, "or

that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury." *Id.* at 108. But *Department of Commerce* itself distinguished *Lyons* as a case about "speculation about future unlawful conduct," while reaffirming the viability of *non*-speculative standing theories even where (unlike here) they rest in part on intervening unlawful acts. 588 U.S. at 768. The cases invoked by the district court do not undermine the conclusion that Plaintiffs here have standing.

## C.   The District Court's Reasoning Is Incompatible with Bedrock Principles of Administrative Law.

The district court's reasoning also improperly sanctions and incentivizes vague rulemaking, which the Constitution and law disfavor. "[R]egulated parties should know what is required of them so they may act accordingly." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Federal agencies thus must "provide regulated parties fair warning of the conduct [a regulation] prohibits or requires" to allow them to order their affairs. *Emp. Sols. Staffing Grp. II, LLC v. Off. of Chief Admin. Hearing Officer*, 833 F.3d 480, 487 (5th Cir. 2016) (alteration in original) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 n.15 (2012)). Clear regulations help businesses and workers

alike comply with the law, understand the legal effects of their conduct, and ensure that they can efficiently structure their activities without the threat of disruptive litigation. Businesses rely on such stability, predictability, and administrability.

Unclear regulations, by contrast, sacrifice predictability to the whims of agency officials. *See* Neil Gorsuch & Janie Nitze, *Over Ruled: The Human Toll of Too Much Law* 6 (2024) (describing the threat to freedom "when a nation's laws are allowed to grow 'so voluminous that they cannot be read, or so incoherent that they cannot be understood'"). When subject to purposefully unclear regulations like the 2024 Rule, businesses and workers are at the mercy of the same federal bureaucrats who chose to promulgate a rule so "'standardless that it invites arbitrary enforcement.'" *Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1343 (11th Cir. 2021) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). Indeed, "regulated parties [must] divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding." *Christopher*, 567 U.S. at 159. This improperly places businesses and workers "attempting to plan around agency action in an

eternal fog of uncertainty." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2272 (2024).

Congress guarded against precisely this outcome in enacting the Administrative Procedure Act. "The APA does not remotely contemplate [a] regime" in which the agency can "write substantive rules more broadly and vaguely, leaving plenty of gaps to be filled in later" outside of the notice-and-comment process. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 111 (2015) (Scalia, J., concurring in the judgment). Vague rules are especially noxious where, as here, they depart from settled understandings and threaten to upset "'serious reliance interests'" that must be "'taken into account.'" *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016).

The district court's reasoning here would improperly inoculate these administrative faults from judicial review. According to the district court, an agency can promulgate a vague regulation without fear of challenge from the parties forced to modify their behavior in consequence precisely *"because"* the regulation "is inherently unpredictable." App. 44. The roadmap for overreaching agencies is clear: Enact a regulation governing uncounted millions of workers and businesses, make it vague

enough to "trap the innocent by not providing fair warning," *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), and then claim immunity from suit on standing grounds.

The district court's reasoning thus portends consequences contrary to the Supreme Court's recent instruction that judicial "abdication in favor of the agency is *least* appropriate" when the agency seeks to exploit a purported "ambiguity" about "the scope of [its] own power." *Loper Bright*, 144 S. Ct. at 2266. This Court should decline to follow the district court down that dangerous path.

## II.   At Minimum, the District Court's Ruling Should Be Confined to the Facts of this Case.

However this Court assesses the standing of the individual Plaintiffs here, its holding should be limited to the facts of this case. Indeed, the district court stressed that these Plaintiffs "are freelance writers seeking engagement" as independent contractors, "not employers subject to the FLSA's requirements." App. 40-41. Litigants challenging the 2024 Rule in other lawsuits hold different roles—including that of "employers subject to the FLSA's requirements." App. 40-41. They possess starkly different grounds for standing.

Although both individual workers and companies have standing to challenge the 2024 Rule under longstanding precedent, *supra*, at 10-22, the injury of the latter is more direct in several ways. As DOL explained in the 2024 Rule, businesses (not workers) are the parties directly responsible for "properly classifying workers as employees or independent contractors" under the FLSA. 89 Fed. Reg. at 1734. And where "the plaintiff is himself an object of the action (or forgone action) at issue," then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62. DOL did not even attempt to argue that the business plaintiffs in *CWI* lacked standing to challenge DOL's previous attempt to rescind the 2021 Rule (before belatedly attempting to raise a standing argument on remand from the Fifth Circuit in 2024). *See supra*, at 4-5.

In particular, businesses will incur extensive "compliance costs" under the 2024 Rule, an "injury" that "is not speculative." *Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 458 (D.C. Cir. 2012). DOL itself stated that the 2024 Rule will impose more than $150 million in familiarization and compliance costs on businesses in the first year of

its application alone, which is likely a gross underestimate of the actual costs. 89 Fed. Reg. at 1733. These costs to businesses include (1) spending considerable time re-analyzing whether workers are properly classified as independent contractors or employees, (2) diverting resources to prepare for and potentially defend against litigation or enforcement actions regarding worker classification, (3) funding healthcare and retirement benefits for independent contractors who are reclassified as employees as a result of the 2024 Rule, and (4) restructuring business operations in response to the reclassification of their independent contractors. *See supra*, at 11-16. For these reasons, businesses will face the brunt of DOL regulation, investigations, and enforcement actions if the government is dissatisfied "down the road" with businesses' attempts to comply with the "inherently unpredictable" 2024 Rule. App. 44.

The 2024 Rule also harms businesses by depriving them of a previously available defense to enforcement actions. Under the Portal-to-Portal Act, regulated entities that relied in good faith on the 2021 Rule could use that reliance as a defense in FLSA litigation. *See* 29 U.S.C. § 259; 86 Fed. Reg. at 1246 (29 C.F.R. § 795.100). But by rescinding and

replacing the 2021 Rule, the 2024 Rule sharply limits the circumstances in which businesses can rely on this affirmative defense. Besides the economic harms inflicted by upsetting reliance interests, this legal alteration of parties' "ability to avoid liability by asserting the Portal-to-Portal defense ... also constitutes an injury" supporting Article III "standing" to challenge the rule. *Johnson v. EEOC*, 1995 WL 374058, at *5 (N.D. Ill. June 21, 1995) (denying motion to dismiss for lack of standing). As the Supreme Court has held in determining whether agency action is final, "depriv[ing]" parties of an otherwise available "safe harbor from liability" is a cognizable "legal consequence[]" that subjects action to judicial review. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599-600 (2016).

In sum, companies that use independent contractors—and, of course, the associations that represent those companies—have different grounds for standing than the individual Plaintiffs here, and those grounds should be unaffected by the outcome of this case.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court or alternatively, confine it to its facts.

Dated:  January 9, 2025

Respectfully Submitted,

 /s/ Maurice Baskin

 /s/ Eugene Scalia

MAURICE BASKIN
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, N.W.
Washington, D.C.  20006
(202) 772-2526
mbaskin@littler.com

EUGENE SCALIA
   *Counsel of Record*
JASON J. MENDRO
ANDREW G.I. KILBERG
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
escalia@gibsondunn.com

*Counsel for Amici Curiae*

*Counsel for Amicus Curiae*
*Financial Services Institute, Inc.*

Stephanie A. Maloney
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, D.C.  20062
(202) 463-5337
smaloney@uschamber.com

*Counsel for Amicus Curiae*
*Chamber of Commerce of the*
*United States of America*

# CERTIFICATE OF COMPLIANCE

**1.     Type Volume**

__X__        This document complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because, excluding parts of the document exempted by Federal Rules of Appellate Procedure 32(f), this document contains 4,877 words.

**2.     Type face and Type-Style**

__X__        This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared using Microsoft Word 2019 in 14-point New Century Schoolbook font.

Dated:  January 9, 2025                  Respectfully Submitted,

                          _/s/ Eugene Scalia_

                          EUGENE SCALIA
                             *Counsel of Record for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2025, I caused the foregoing brief to be electronically filed with the United States Court of Appeals for the Eleventh Circuit by using the Court's CM/ECF system.

Dated:  January 9, 2025                Respectfully Submitted,

 */s/ Eugene Scalia*
EUGENE SCALIA
*Counsel of Record for Amici Curiae*