# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

KARON WARREN, DEBORAH KAPLAN, KIMBERLY KAVIN, and
JENNIFER SINGER,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER,
U.S. Secretary of Labor; PATRICIA DAVIDSON, in her official capacity as Deputy
Administrator of the U.S. Department of Labor's Wage and Hour Division; and U.S.
DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Northern District of Georgia

_____

## BRIEF FOR APPELLEES

_____

YAAKOV M. ROTH
  _Acting Assistant Attorney General_

MICHAEL S. RAAB
JENNIFER L. UTRECHT
  _Attorneys, Appellate Staff_
  _Civil Division, Room 7710_
  _U.S. Department of Justice_
  _950 Pennsylvania Avenue NW_
  _Washington, DC 20530_
  _(202) 353-9039_

## AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1 through 26.1-3, I hereby certify that the following persons, firms, and associations may have an interest in the outcome of this case:

American Trucking Associations, Amicus Curiae in Support of Plaintiff

Associated Builders and Contractors, Inc., Amicus Curiae in Support of Plaintiff

Associated Builders and Contractors of Southeast Texas, Inc., Amicus Curiae in Support of Plaintiff

Baskin, Maurice, Counsel for Amici Curiae Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations

Chamber of Commerce of the United States of America, Amicus Curiae in Support of Plaintiff

Coalition for Workforce Innovation, Amicus Curiae in Support of Plaintiff

Davidson, Patricia, in her official capacity as Deputy Administrator of the U.S. Department of Labor's Wage and Hour Division, Defendant/Appellee

Economic Policy Institute, Amicus Curiae in Support of Defendant

* Additions to previous certificate marked with an asterisk.

Farmworker Justice, Amicus Curiae in Support of Defendant

Financial Services Institute, Inc., Amicus Curiae in Support of Plaintiff

Freeman, Wilson C., Counsel for Plaintiffs/Appellants

Greenamyre, Zack, Counsel for Amici Curiae National Employment Law Project and Public Citizen

Looman, Jessica, in her prior capacity as former Administrator of the U.S. Department of Labor's Wage and Hour Division Defendant/Appellee

Kilberg, Andrew G.I., Counsel for Amici Curiae Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations

Maloney, Stephanie A., Counsel for Amici Curiae Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations

Mendro, Jason J., Counsel for Amici Curiae Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.;

Financial Services Institute, Inc.; National Federation of Independent Business, Inc.;

National Retail Federation; and American Trucking Associations

Micone, Vince, as Acting Secretary of Labor, Defendant/Appellee

National Employment Law Project, Amicus Curiae in Support of Defendant

National Federation of Independent Business, Inc., Amicus Curiae in Support

of Plaintiff

National Retail Federation, Amicus Curiae in Support of Plaintiff

Olson, Lisa A., Trial Counsel for Defendants

Public Citizen, Amicus Curiae in Support of Defendant

Public Justice Center, Amicus Curiae in Support of Defendant

* Roth, Yaakov M., Acting Assistant Attorney General, Counsel for

Defendants/Appellees

Raab, Michael S., Counsel for Defendants/Appellees

REAL Women in Trucking, Amicus Curiae in Support of Defendant

Restaurant Opportunity Centers United, Amicus Curiae in Support of

Defendant

Romero, Samantha R., Counsel for Plaintiffs/Appellants

Samburg, Mark B., Counsel for Amici Curiae Public Justice Center,

Farmworker Justice, Restaurant Opportunity Centers United, REAL Women in

Trucking, Service Employees International Union, and Economic Policy Institute

Scalia, Eugene, Counsel for Amici Curiae Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations

Service Employees International Union, Amicus Curiae in Support of Defendant

Singer, Jennifer, Plaintiff/Appellant

Su, Julie, former acting U.S. Secretary of Labor, Defendant/Appellee

Story, Richard W., Senior United States District Judge

United States Department of Labor, Defendant/Appellee

United States Department of Labor, Wage and Hour Division, Defendant/Appellee

Utrecht, Jennifer, Counsel for Defendants/Appellees

Von Bokern, Jordan L., Counsel for Amici Curiae Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations

Wake, Luke A., Counsel for Plaintiffs/Appellants

Warren, Karon, Plaintiff/Appellant

Webster, Leigh Ann, Counsel for Amici Curiae Public Justice Center,

Farmworker Justice, Restaurant Opportunity Centers United, REAL Women in

Trucking, Service Employees International Union, and Economic Policy Institute


Dated: April 4, 2025                                    /s/ Jennifer L. Utrecht
                                                            JENNIFER L. UTRECHT
                                                            Attorney for Defendants-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The district court dismissed plaintiffs' suit for lack of standing. That judgment was correct and should be affirmed for the reasons stated by the district court. The government does not believe that oral argument is necessary to affirm that judgment, although the government stands ready to present oral argument if the Court would find it useful.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF JURISDICTION ................................................................... 3

STATEMENT OF THE ISSUE ........................................................................... 4

STATEMENT OF THE CASE ............................................................................ 4

I.    Statutory Background ............................................................................... 4

      A.    The Fair Labor Standards Act ..................................................... 4

      B.    The Supreme Court's "Economic Reality" Analysis for
            Determining Employee or Independent Contractor Classification ......... 5

II.   The Department of Labor's Regulations and Guidance ........................ 8

      A.    The Department of Labor's Prior Guidance ............................... 8

      B.    The 2021 Independent Contractor Rule ...................................... 9

      C.    The 2024 Rule ............................................................................. 11

III.  Factual and Procedural Background ...................................................... 13

IV.   Standard of Review ................................................................................ 14

SUMMARY OF ARGUMENT .......................................................................... 15

ARGUMENT ...................................................................................................... 19

I.    The District Court Correctly Concluded that Plaintiffs did not Establish
      Standing .................................................................................................. 19

II.   Any Questions on the Merits Should Be Remanded to the District Court
      to Determine in the First Instance ......................................................... 34

CONCLUSION ................................................................................................... 35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bartels v. Birmingham,*
  332 U.S. 126 (1947) .................................................................................... 6, 8

*Boire v. Pilot Freight Carriers, Inc.,*
  515 F.2d 1185 (5th Cir. 1975) .................................................................. 18, 32

*Booker v. Secretary, Fla. Dep't of Corr.,*
  22 F.4th 954 (11th Cir. 2022) ......................................................................... 19

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ......................................................................................... 19

*\* Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...........................................3, 16, 17, 20, 24, 25, 27, 31, 32, 33

*Coalition for Workforce Innovation v. Su,*
  No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024) ......................................... 10

*Coalition for Workforce Innovation v. Walsh,*
  No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated per curiam,*
  No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024) ......................................... 10

*Colt & Joe Trucking, LLC v. U.S. Department of Labor,*
  No. 24-cv-00391, 2025 WL 56658 (D.N.M. Jan. 9, 2025)......................................25, 27

*\* Corbett v. Transportation Sec. Admin.,*
  930 F.3d 1225 (11th Cir. 2019) .................................................. 3, 14, 17, 20, 24, 25, 33

*Department of Commerce v. New York,*
  568 U.S. 752, 768 (2019)................................................................................. 26

*Dream Defenders v. Governor of State of Florida,*
  57 F.4th 879 (11th Cir. 2023) ......................................................................... 20

*Frisard's Transp., LLC v. Department of Labor,*
  No. 2:24-cv-00347, Minute Entry (E.D. La. Mar. 8, 2024),

*appeal pending* No. 24-30223 (5th Cir.) .......................................................... 25

*Goldberg v. Whitaker House Co-op., Inc.,*
   366 U.S. 28 (1961) ................................................................................... 5, 7

*Golden v. Zwickler,*
   394 U.S. 103 (1969) ..................................................................................... 19

*Laird v. Tatum,*
   408 U.S. 1 (1972) ................................................................................... 25, 27

\* *Littman v. U.S. Department of Labor,*
   No. 3:24-cv-00194, 2024 WL 763583 (M.D. Tenn. Mar. 11, 2025) ........ 25, 26, 28, 29

\* *Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................................ 16, 19, 24, 25, 28, 29

*Massachusetts v. Mellon,*
   262 U.S. 447 (1923) ..................................................................................... 19

*Nationwide Mut. Ins. Co. v. Darden,*
   503 U.S. 318 (1992) .................................................................................... 1, 5

*NLRB v. Hearst Publ'ns, Inc.,*
   322 U.S. 111 (1944) ....................................................................................... 6

*NLRB v. United Ins. Co. of Am.,*
   390 U.S. 254 (1968) ....................................................................................... 7

*Rutherford Food Corp. v. McComb,*
   331 U.S. 722 (1947) ................................................................................ 5, 6, 8

\* *Scantland v. Jeffry Knight, Inc.,*
   721 F.3d 1308 (11th Cir. 2013) ................................................. 5, 8, 12, 20-21, 23

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ..................................................................................... 20

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ................................................................................ 20, 22

*United States v. Silk*,
  331 U.S. 704 (1947) ............................................................................ 6, 7

*Usery v. Pilgrim Equip. Co.*,
  527 F.2d 1308 (5th Cir. 1976) ......................................................... 8, 21

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947) .............................................................................. 5

*Whitmore v. Arkansas*,
  495 U.S. 149, 158 (1990) ..................................................................... 25

**Statutes:**

Fair Labor Standards Act of 1938,
  29 U.S.C. § 201 *et seq.* .................................................................... 1, 4
    29 U.S.C. § 202(a) ............................................................................ 4
    29 U.S.C. § 203(d) ............................................................................ 4
    29 U.S.C. § 203(e)(1) ........................................................................ 4
    29 U.S.C. § 203(g) ............................................................................ 4
    29 U.S.C. § 206(a) ....................................................................... 4, 29
    29 U.S.C. § 207(a) ....................................................................... 4, 29
    29 U.S.C. § 211(c) ............................................................................ 4

Labor Management Relations Act, 1947 (Taft-Hartley Act),
  Pub. L. No. 80-101, tit. I, § 101, 61 Stat. 136, 137-38 ......................... 7

Pub. L. No. 80-642, § 2(a), 62 Stat. 438, 438 (1948) ............................... 7

28 U.S.C. § 1291 ...................................................................................... 4

28 U.S.C. § 1331 ...................................................................................... 3

**Regulations:**

29 C.F.R. pt. 795 .................................................................................... 11
    29 C.F.R. § 795.100 ..................................................................... 12, 21
    29 C.F.R. § 795.105(b) ................................................................. 11, 26
    29 C.F.R. § 795.110(a) ................................................................. 11, 22
    29 C.F.R. § 795.110(a)(1) ............................................................. 12, 22

29 C.F.R. § 795.110(a)(2) ............................................ 22

29 C.F.R. § 795.110(b) ................................................ 26

29 C.F.R. § 795.110(b)(1)-(6) ...................................... 12

29 C.F.R. § 795.115 ................................................ 12, 22

**Other Authorities:**

86 Fed. Reg. 1168 (Jan. 7, 2021) ............................... 1, 8, 9

86 Fed. Reg. 12,535 (Mar. 4, 2021) ............................... 10

86 Fed. Reg. 24,303 (May 6, 2021) ............................... 10

87 Fed. Reg. 62,218 (Oct. 13, 2022) ............................... 11

89 Fed. Reg. 1638 (Jan. 10, 2024) ...................... 1, 6, 7, 8, 9, 11, 12, 15,
20, 21, 22, 23, 27, 28, 29, 30

**INTRODUCTION**

The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, requires covered employers to pay nonexempt employees a minimum wage and overtime pay. As relevant here, the Supreme Court has recognized that the FLSA's definition of "employee" is "striking[ly]" broad; it covers all workers who, as a matter of economic reality, are economically dependent on the employer for work, rather than independent contractors who are in business for themselves. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).

At issue in this litigation is a regulation promulgated in January 2024 that sets forth interpretive guidance clarifying the factors that the Department of Labor will assess when analyzing a working relationship to determine whether a worker is, as a matter of economic reality, in business for themselves (and thus are independent contractors) or is economically dependent on the employer for work (and thus is an employee) under the FLSA. 89 Fed. Reg. 1638 (Jan. 10, 2024) (2024 Rule). As relevant here, the rule rescinds a prior interpretive guidance published in January 2021, 86 Fed. Reg. 1168 (Jan. 7, 2021) (2021 Rule), which articulated the economic-reality analysis in a different manner. The 2024 Rule replaced that analysis with an approach to classifying workers that the Department derived from the "same analysis that courts have applied for decades," 89 Fed. Reg. at 1658, 1727, and that is consistent with factors that have generally guided the Department in its exercise of its enforcement authority for decades prior to the publication of the 2021 Rule.

Plaintiffs ask this Court to invalidate the 2024 Rule because, in their view, the rule threatens plaintiffs' continued ability to operate as independent contractors. As the district court properly concluded, however, plaintiffs' alleged injuries are purely hypothetical. Plaintiffs have provided no evidence suggesting that the 2024 Rule requires them to take (or not take) any actions to maintain their independent contractor status. Indeed, despite their broad claims about the likely effects of the rule, plaintiffs have not identified a single working relationship in which they have been, or reasonably believe they will be, reclassified as employees under the test articulated in the 2024 Rule.

Instead, the crux of plaintiffs' standing theory is that the 2024 Rule will have a chilling effect on their clients' willingness to work with independent contractors. In their view, the 2024 Rule's fact-specific inquiry provides comparatively less certainty than the 2021 Rule. Because of this, plaintiffs believe that businesses may perceive an increased risk that the Department will classify workers as employees and may choose not to work with independent contractors like plaintiffs in order to avoid potential liability.

The district court properly rejected plaintiffs' reliance on the alleged chilling effect of the 2024 Rule's fact-specific nature, which depends upon contingencies and speculation about how the Rule may be applied and how plaintiffs' clients will likely react to it. That speculative theory of future injury plainly does not satisfy the

constitutional requirements that a cognizable injury be certainly impending, rather than conjectural or hypothetical.

Plaintiffs fare no better in arguing that they have taken steps to maintain their independent contractor status and assuage their clients' concerns about potential misclassification. As the Supreme Court has explained, plaintiffs may not "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013); *Corbett v. Transportation Sec. Admin.*, 930 F.3d 1225, 1238-39 (11th Cir. 2019). As noted, plaintiffs have provided no evidence to support their claim that the 2024 Rule imposes a certainly impending risk they would be classified as employees. There is thus no reason to conclude that the steps plaintiffs have taken are the necessary or likely result of the 2024 Rule, rather than the result of plaintiffs' purely speculative fears. Plaintiffs thus have not shown that any concrete, ongoing injury that is fairly traceable to the 2024 Rule.

Because the district court correctly concluded that plaintiffs' alleged injuries are entirely insufficient to support standing, this Court should affirm. But if this Court disagrees, it should remand for the district court to consider the merits in the first instance.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's decision under 28 U.S.C. § 1331. As discussed below, however, plaintiffs have not demonstrated standing. *See infra* pp. 19-

34. The district court entered its order and judgment dismissing plaintiffs' complaint on October 7, 2024. App. 43. Plaintiffs filed a timely notice of appeal on October 23, 2024. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly determined that plaintiffs lack standing.

## STATEMENT OF THE CASE

### I. Statutory Background

#### A. The Fair Labor Standards Act

Congress enacted the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Id.* § 202(a). To that end, the FLSA requires covered employers to pay nonexempt employees at least the federal minimum wage for each hour worked and at least 1.5 times the employee's regular rate for hours worked in excess of 40 hours a workweek. 29 U.S.C. §§ 206(a), 207(a). The FLSA also mandates that employers keep certain records regarding employees. 29 U.S.C. § 211(c).

As relevant here, the FLSA generally defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is, in turn, defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The FLSA further defines "[e]mploy" as including "to suffer or permit to work." *Id.* § 203(g). The Supreme Court has stated that this

definition is "striking[ly]" broad, and that it "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)).

### B. The Supreme Court's "Economic Reality" Analysis for Determining Employee or Independent Contractor Classification

The Supreme Court has recognized that "independent contractors" fall outside the FLSA's broad understanding of employment. *See, e.g., Rutherford Food Corp.*, 331 U.S. at 729 (noting that "[t]here may be independent contractors . . . who would alone be responsible for the wages and hours of their own employees" and who personally fall outside the scope of an employee under the FLSA). At the same time, the Supreme Court has held that the FLSA's broad definition of employment encompasses "'many persons and working relationships, which prior to th[e] [FLSA], were not deemed to fall within an employer-employee category'" under the common law. *Id.* at 728-29 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947)); *see also Nationwide Mut. Ins.*, 503 U.S. at 326. The Supreme Court has accordingly recognized that the question whether a worker is an employee or an independent contractor under the FLSA must look beyond the traditional common law test of employer control. *E.g., Rutherford Food Corp.*, 331 U.S. at 728-29; *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Nationwide Mut. Ins.*, 503 U.S. at 325-26; *see also Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013).

5

Instead, beginning in the 1940s, the Supreme Court developed a multifactor test for distinguishing between employees and independent contractors that looks to whether, as a matter of economic reality, the worker is economically dependent on the employer for work (and thus is an employee) or is in business for themselves (and thus is an independent contractor). *See* 89 Fed. Reg. at 1641-42 (describing this history); *NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 126-29 (1944) (analyzing similar language in the National Labor Relations Act and holding that the broad definition of employee "leaves no doubt that its applicability is to be determined broadly, in doubtful situations, by underlying economic facts rather than technically and exclusively by previously established legal classifications"); *United States v. Silk*, 331 U.S. 704, 713, 715-18 (1947) (analyzing similar language in the Social Security Act and holding that the broad definition of employee requires analysis of a worker's "economic reality"); *Rutherford Food Corp.*, 331 U.S. at 728-29 (analyzing the economic reality of the workers' relationship and holding that workers who performed work in an employer's production line were not independent contractors under the FLSA); *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) (holding that employee status under the Social Security Act "was not to be determined solely by the idea of control" under the

common law, but rather, by looking to whether "as a matter of economic reality" the worker is "dependent upon the business to which they render service").[1]

The Supreme Court's decisions identify several non-exhaustive factors that should guide the analysis of whether a worker is, as a matter of economic reality, dependent on the potential employer for work, with no one factor or factors having predetermined weight. *See* 89 Fed. Reg. at 1638, 1641-44. Specifically, in *Silk*, the Supreme Court identified five factors as "important" for distinguishing between employees and independent contractors: "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation." *Silk*, 331 U.S. at 716. The Court further explained that "[n]o one [factor] is controlling nor is the list complete." *Id.* And the Court went on to note that the workers in that case were "from one standpoint an integral part of the businesses" of the employer, supporting a conclusion that some of the workers in that case were employees. *Id.* Similarly, in *Rutherford*, decided the same day as *Silk*, the

---

[1] Following this series of decisions, Congress amended the definition of employment in the Social Security Act and the National Labor Relations Act to clarify that traditional common-law agency principles should be used to determine whether a worker has the status of an independent contractor under those statutes. *See* Labor Management Relations Act, 1947 (Taft-Hartley Act), Pub. L. No. 80-101, tit. I, § 101, 61 Stat. 136, 137-38; Social Security Act of 1948, Pub. L. No. 80-642, § 2(a), 62 Stat. 438, 438; *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 256 (1968). Congress did not similarly amend the definition of employment in the FLSA. *See Whitaker House Co-Op.*, 366 U.S. at 32 (affirming that "economic reality" rather than "technical" common-law concepts remained the test under the FLSA (quoting *Silk*, 331 U.S. at 713)).

Court affirmed a federal court of appeals decision that analyzed an employment relationship based on economic realities. *See* 331 U.S. at 727. Again, the Court rejected an approach based on "isolated factors" and considered the "circumstances of the whole activity." *Id.* at 730. After considering several of the *Silk* factors, the Court held that the workers in question were best characterized as employees of the establishment. *Id.* at 729; *see also Bartels*, 332 U.S. at 130.

Consistent with the Supreme Court's guidance, all federal courts of appeals apply an "economic reality" analysis for determining whether someone is an employee or an independent contractor under the FLSA. 89 Fed. Reg. at 1642 & nn.52-53 (listing cases). Although the courts vary slightly in their articulation of the factors that guide this inquiry, they have historically and uniformly engaged in a multifactor analysis, looking to the factors first articulated in *Silk* as useful guideposts, while acknowledging that those factors are not exclusive and should not be applied mechanically. *Id.* at 1642; *see also Scantland*, 721 F.3d at 1311-12; *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976).

## II.     The Department of Labor's Regulations and Guidance

### A.     The Department of Labor's Prior Guidance

Consistent with the Supreme Court's opinions in *Rutherford* and *Silk*, the Department of Labor has long applied a multifactor economic reality test when considering whether a worker is an employee or an independent contractor under the FLSA. For example, in 1949, the Department's Wage and Hour Division issued an

opinion letter that "distill[ed] six 'primary factors which the Court considered significant' in *Rutherford* and *Silk*," emphasizing that under those decisions, "no single factor is controlling" in determining whether an employment relationship exists under the FLSA. 89 Fed. Reg. at 1643. Subsequent opinion letters and interpretive guidance issued in the decades that followed provided similar recitations of this multifactor analysis. *Id.* at 1642-44.

### B.    The 2021 Independent Contractor Rule

**1.** On January 7, 2021, the Department promulgated a regulation with an effective date of March 8, 2021, that intended to add a new part to Title 29 of the Code of Federal Regulations (Part 795), setting forth a generally applicable interpretation regarding how to classify workers as employees or independent contractors under the FLSA. 86 Fed. Reg. 1168. The 2021 Rule reiterated the longstanding principle that a worker is an employee under the FLSA if, as a matter of economic reality, the worker is economically dependent on the employer for work. *Id.* at 1168. The 2021 Rule also made several changes as compared to the analysis applied by courts. 89 Fed. Reg. at 1644-45; *see also* 86 Fed. Reg. at 1168 (acknowledging that the 2021 Rule's articulation of the economic reality test differs from that used by "most courts").

For example, the 2021 Rule designated two considerations as "core factors" that should always carry greater weight in the economic reality analysis: (i) the nature and degree of control over the employee's work, and (ii) the worker's opportunity for

profit or loss. 89 Fed. Reg. at 1644; 86 Fed. Reg. at 1246-47. The 2021 Rule stated that three other potentially relevant factors—the amount of skill required, the degree of permanence of the working relationship, and whether the work is part of an integrated unit of production—were "less probative and, in some cases, may not be probative at all" of economic dependence, and that they were "highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." 86 Fed. Reg. at 1246-47. The 2021 Rule also excluded from consideration whether the work performed was central or important to the employer's business. *Id.*

**2.** In March 2021, the Department published a rule to delay the effective date of the 2021 Rule, and later published a rule to withdraw it. *See* 86 Fed. Reg. 12,535 (Mar. 4, 2021) (the Delay Rule); 86 Fed. Reg. 24,303 (May 6, 2021) (the Withdrawal Rule).

Both the Delay Rule and the Withdrawal Rule were challenged in *Coalition for Workforce Innovation v. Walsh* (*CWI*), No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated per curiam*, No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024). The district court in *CWI* held that the Delay and Withdrawal Rules violated certain provisions of the Administrative Procedure Act and vacated both on a universal basis, concluding that the 2021 Rule became effective on March 8, 2021. *See id.* The Fifth Circuit vacated that decision as moot after the Department promulgated the 2024 Rule challenged in the current appeal. *See Coalition for Workforce Innovation v. Su*, No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024) (per curiam).

## C.     The 2024 Rule

On October 13, 2022, the Department published a new proposed rule for public comment.  *See* 87 Fed. Reg. 62,218 (Oct. 13, 2022).  After receiving and considering more than 55,000 comments, on January 10, 2024, the Department promulgated the rule challenged here, which became effective on March 11, 2024.

The 2024 Rule has two operative parts.  First, the 2024 Rule rescinds the 2021 Rule.  Second, the 2024 Rule replaces the 2021 Rule with interpretive guidance that is "consistent with existing judicial precedent and the Department's longstanding guidance" prior to the 2021 Rule.  89 Fed. Reg. at 1647; *see* 29 C.F.R. pt. 795.  In contrast to the 2021 Rule's elevation of two "core factors," the 2024 Rule provides a totality-of-the-circumstances analysis in which no factor or set of factors has any predetermined weight.  29 C.F.R. §§ 795.105(b), 795.110(a).  And the 2024 Rule identifies six non-exhaustive factors that have been previously considered relevant by the courts that serve as "tools or guides" in the economic-reality analysis: (i) the worker's opportunity for profit or loss depending on managerial skill, (ii) investments by the worker and the potential employer, (iii) the degree of permanence of the work relationship, (iv) the nature and degree of control, (v) the extent to which the work performed is an integral part of the potential employer's business,[2] and (vi) the

---

[2] The 2024 Rule noted that, because the courts of appeals apply the relevant factors with some variations, not all courts of appeals list the "integral part" factor as one of the considerations that guide the analysis.  89 Fed. Reg. at 1642.  However, this

*Continued on next page.*

worker's skill and initiative.  *Id.* § 795.110(a)(1), (b)(1)-(6).  The preamble to the 2024 Rule also provides a detailed discussion of how to apply each factor.  *See* 89 Fed. Reg. at 1671-1725.

In addressing the need for the 2024 Rule, the Department explained that the subregulatory guidance issued prior to the 2021 Rule "provided appropriate guidance to the regulated community."  89 Fed. Reg. at 1659.  It concluded, however, that publishing a detailed regulation that transparently and clearly set forth how the Department will analyze worker classifications in an accessible format would be "helpful to workers and businesses alike."  *Id.* at 1659-60, 1724.  The 2024 Rule makes clear, however, that it contains only "general interpretations" that are "intended to serve as a 'practical guide to employers and employees' as to how the Department will seek to apply the Act" in the performance of its duties, such as when classifying workers for the purpose of investigations of FLSA violations and enforcement actions.  29 C.F.R. § 795.100.  In addition, the Department made clear that the decision to promulgate a new regulation is separate and severable from the decision to rescind the 2021 Rule.  *Id.* § 795.115; 89 Fed. Reg. at 1725 (The Department's intent "is for the rescission to remain operative even if this final rule's regulations replacing the [2021 Rule] are invalidated for any reason.").

---

Court has identified "the extent to which the service rendered is an integral part of the alleged employer's business" as one of the factors.  *Scantland*, 721 F.3d at 1312.

### III.     Factual and Procedural Background

Plaintiffs are four freelance writers and editors from Georgia and New Jersey who operate as independent contractors and respectively publish works covering a variety of topics.  App. 008-009.  In 2019, plaintiffs founded an informal coalition of freelancers and independent contractors called "Fight for Freelancers" that "seek[s] to protect their ability to work independently from government overreach."  App. 016-017.  Through that organization, plaintiffs commented on the proposed 2024 Rule, "express[ing] fears about the uncertainty associated with" the 2024 Rule's multi-factor test and how it would apply to their businesses compared to what they perceive as the 2021 Rule's more predictable guidance.  App. 017.

In January 2024, plaintiffs filed suit challenging the 2024 Rule, claiming that the rule violated the Administrative Procedure Act because it was arbitrary and capricious, and that it was unconstitutionally vague.  App. 019-022.  However, plaintiffs did not serve the defendants until March 15, 2024, after the 2024 Rule went into effect.  Dkt. No. 10.  Plaintiffs then filed a motion for summary judgment, asking the district court to vacate the 2024 Rule, enjoin the defendants from enforcing the 2024 Rule, and declare the 2021 Rule still in effect.  Defendants filed a cross-motion to dismiss, or in the alternative a motion for summary judgment, arguing that plaintiffs lacked standing and that, in any event, the 2024 Rule was lawful.

In October 2024, the district court granted the government's motion to dismiss for lack of standing.  As the court explained, to obtain injunctive or declaratory relief,

plaintiffs must show that they are likely to suffer an actual or imminent—rather than a conjectural or speculative—injury if the rule is not enjoined. App. 042. But plaintiffs' claims of future harm arising from the rule were purely speculative. App. 042. Plaintiffs did not allege that, for example, that they would necessarily be classified as employees under the rule if they continue to operate their respective freelancing businesses without any change in operations. Instead, plaintiffs alleged that they are harmed by the "uncertainty" about whether the 2024 Rule's fact-specific, multi-factor approach *may* result in them qualifying as employees in some instances, which could, in turn, result in lost future work opportunities. App. 041-042. But that uncertainty is, as the district court concluded, "precisely what forecloses Plaintiffs' ability to pursue their claims." App. 041-042. The hypothetical possibility that one or more of the plaintiffs may qualify as an independent contractor in one instance and an employee in another, depending upon the specific facts and nature of their work, is not enough to establish actual and imminent injury that is "certainly impending." App. 041-042.

## IV.    Standard of Review

This Court reviews questions concerning subject-matter jurisdiction, including standing, de novo. *Corbett v. Transportation Sec. Admin.*, 930 F.3d 1225, 1228 (11th Cir. 2019). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.*

# SUMMARY OF ARGUMENT

The regulation at issue in this case is an interpretive guidance document that explains how the Department of Labor will analyze whether workers are, as a matter of economic reality, in business for themselves (and thus are independent contractors) or are economically dependent on the employer for work (and thus are employees) under the FLSA. As relevant here, the 2024 Rule rescinds a prior interpretive guidance published in January 2021, which articulated the economic-reality analysis in a different manner. The 2024 Rule replaced that analysis with an approach to classifying workers "derived from the same analysis that courts have applied for decades," 89 Fed. Reg. at 1658, and that the Department determined was consistent with the analysis that generally guided the Department in the exercise of its enforcement authority for decades prior to the publication of the 2021 Rule.

**I.** The district court correctly concluded that plaintiffs have not identified any tangible, non-speculative injury arising from the 2024 Rule. By its terms, the 2024 Rule does not require plaintiffs to take (or not take) any action. Plaintiffs fear that the 2024 Rule will result in their classification as employees, rather than independent contractors, but they provide no specific evidence regarding their working relationships that would tend to demonstrate that this is a certainly impending threat, rather than a purely subjective fear. Indeed, plaintiffs have not identified a single working relationship in which they have been, or reasonably believe they will be, classified as employees under the test articulated in the 2024 Rule. Nor have plaintiffs

alleged any intent to enter into a working relationship that would render them economically dependent on a putative client in a manner they believe would lead to their classification as an employee under the 2024 Rule. Plaintiffs thus have not shown that the rule directly causes them an actual and imminent injury.

In district court, plaintiffs based their theory of injury primarily on the rule's alleged chilling effect on their businesses. For example, in declarations accompanying their motions, plaintiffs stated that they feared that clients would choose not to engage with independent contractors like them for fear of liability in the event of misclassification. Notably, however, plaintiffs did not provide any evidence or argument that this was the likely—as opposed to merely possible or speculative—result of the 2024 Rule. For one thing, as noted, plaintiffs provide no evidence tending to show that there is an objectively reasonable risk that plaintiffs will be classified as employees at some point in the future. And though two plaintiffs claim that they have already lost business because of their clients' fear of liability, they provide no specific details to substantiate their assertions about their clients' motivations. Put differently, plaintiffs' claim of harm in the form of lost business is based entirely upon an "attenuated chain of possibilities" involving the "'unfettered choices made by independent actors.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 n.5 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). That plainly does not satisfy the constitutional requirement that an injury be certainly impending, rather than hypothetical or conjectural, nor have plaintiffs shown that any

lost business would be fairly traceable to the rule, as opposed to subjective fears about hypothetical future circumstances.

Plaintiffs fare no better asserting on appeal that they have voluntarily undergone small changes to their businesses to, in their view, remain as independent contractors or assuage their clients' potential concerns about prospective misclassification. As the Supreme Court has explained, a plaintiff cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 415; *see also Corbett v. Transportation Sec. Admin.*, 930 F.3d 1225, 1238-39 (11th Cir. 2019). And here, as already noted, plaintiffs have not identified any facts in support of their claim that they face a certainly impending risk of not being classified as independent contractors under the rule. Likewise, plaintiffs' claim that they made these changes because of the 2024 Rule is purely conclusory. Plaintiffs have provided no specific details about their existing arrangements or the changes they have made. There is thus no evidentiary support for their claim that these changes were necessary to avoid any certainly impending risk that their classification would change under the 2024 Rule. Plaintiffs have thus not shown that any ongoing injuries that plaintiffs are suffering in the form of changed business practices are fairly traceable to the rule.

In arguing to the contrary, plaintiffs assert that the efforts they have undertaken are the "predictable result" of the rule. In support of this, plaintiffs assert that compliance with the 2024 Rule's fact-specific test is "nearly impossible" in

comparison to the 2021 Rule, which necessarily requires businesses who use independent contractors to put constraints on their existing working relationships to avoid liability. Br. 23. But plaintiffs' claim that it is somehow impossible to work with independent contractors without the certainty of the 2021 Rule is particularly implausible given that plaintiffs themselves operated for years as independent contractors prior to the 2021 Rule. And despite plaintiffs' insistence that they have benefited from the 2021 Rule's alleged certainty, plaintiffs identify no evidence that any of their clients changed their practices in ways favorable to plaintiffs after the 2021 Rule was promulgated, or that those clients have now reversed those changes in light of the 2024 Rule. This further underscores the tenuous connection between the 2024 Rule and plaintiffs' assertions of harm.

**II.** Because plaintiffs lack standing, this Court should affirm. If this Court disagrees, however, the government respectfully requests that the Court remand any questions on the merits to be addressed by the district court in the first instance. Due to the change in administration on January 20, 2025, there is new Department of Labor leadership. As of the time of this filing, a motion to extend the time to file this brief is currently pending before this Court, asking the Court to extend the deadline in order to permit the Department's new leadership sufficient time to familiarize themselves with the issues in this case and determine, *inter alia*, their position regarding the merits and whether to initiate new rulemaking to reconsider the rule. As a result, the government is not currently in a position to brief the merits of plaintiffs'

challenge. In addition, as noted in the abeyance motion filed earlier this morning, the Department has determined that it intends to reconsider the rule. Accordingly, the government respectfully requests that, if this Court reverses the district court's judgment on standing, that it remand any issues on the merits to be addressed by the district court in the first instance.

## ARGUMENT

## I.    The District Court Correctly Concluded that Plaintiffs did not Establish Standing

**A.**  Article III standing is a threshold jurisdictional question that requires plaintiffs to demonstrate (1) a "'concrete and particularized'" injury in fact, (2) "'a causal connection between the injury and the conduct complained of,'" and (3) a "likel[ihood]" that the injury will be "'redressed by a favorable decision.'" *Booker v. Secretary, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The district court properly determined that plaintiffs have not met their burden to demonstrate a cognizable injury in fact to challenge the 2024 Rule.

To meet that burden, plaintiff must demonstrate that they are "immediately in danger of sustaining some direct injury" that is "'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (first quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); and then quoting *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969)). And when standing turns on a claim of future injury,

the threatened injury must be "certainly impending" or there must be a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (a plaintiff seeking injunctive relief to avoid a "risk of future harm" must show that the risk "is sufficiently imminent and substantial"); *Dream Defenders v. Governor of State of Florida*, 57 F.4th 879, 888 (11th Cir. 2023). "[A]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409; *Corbett v. Transportation Sec. Admin.*, 930 F.3d 1225, 1239 (11th Cir. 2019).

**1.** At issue in this case is a regulation that sets forth an interpretive guidance explaining how the Department will analyze the question of whether, as a matter of economic reality, a worker is dependent upon the employer for work (and thus is an employee) or is in business for themselves (and thus is an independent contractor) under the FLSA for the purposes of its own enforcement efforts. 89 Fed. Reg. 1638 (Jan. 10, 2024). That regulation has two operative parts.

First, the 2024 Rule rescinds a prior regulation published in January 2021. As the 2024 Rule's preamble explained, courts analyzing whether a worker is an employee or an independent contractor under the FLSA have historically and uniformly conducted a multifactor, totality-of-the-circumstances analysis, with no one factor or set of factors having dispositive weight. 89 Fed. Reg. at 1638, 1641-42; *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 & n.2 (11th Cir. 2013) (holding that several

factors "guide" the overarching inquiry into whether personnel are "'economic[ally] dependen[t] . . . on the business with which they are connected,'" that "[n]o one factor is controlling, nor is the list exhaustive," and that the "weight of each factor depends . . . on the facts of the case") (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976)).

The 2021 Rule recognized that the appropriate question under the FLSA is whether, as a matter of economic reality, a worker is dependent on an employer for work. The 2021 Rule's articulation of how the Department planned to conduct that economic-reality analysis made several changes as compared to the analysis applied by courts. Namely, the 2021 Rule predetermined that two "core factors" should generally carry a greater weight than the others, and it precluded consideration of certain facts that courts have previously considered relevant to the question of economic dependence. *See* 89 Fed. Reg. at 1644-45, 1649-53.

Second, the 2024 Rule set forth interpretive guidance that the Department believed to be consistent with judicial precedent and the Department's longstanding practice. *See* 29 C.F.R. § 795.100 (stating that the rule provides only "general interpretations" that will "guide" the Administrator of the Wage and Hour Division in "the performance of their duties," and that likewise can serve as meaningful guidance for employees, employers, and courts). That portion of the rule reiterates that the ultimate test is whether, as a matter of economic reality, the worker is dependent upon the employer for work. *Id.* § 795.105(b). It lists six non-exhaustive factors derived

from judicial precedent as relevant to that inquiry, *id.* § 795.110(b), and states that these factors do not have any predetermined weight and should not be applied mechanically, *id.* § 795.100(a)(2). Rather, the factors serve merely as "tools or guides" to analyze whether, under the totality of the circumstances, a worker is economically dependent on the potential employer for work. *Id.* § 795.110(a)(1). The Department also made clear that the decision to promulgate a new regulation is separate and severable from the decision to rescind the 2021 Rule. *Id.* § 795.115; 89 Fed. Reg. at 1725.

**2.** Plaintiffs are freelance writers and editors from Georgia and New Jersey who operate as independent contractors and publish works covering a variety of topics. Plaintiffs wish to remain in business for themselves as independent contractors and claim that the 2024 Rule "threatens" their continued ability to do so. As the district court correctly held, plaintiffs' speculative fears about the effects of the 2024 Rule do not supply a "sufficiently imminent and substantial" "risk of future harm" to support standing for the injunctive relief they seek. *TransUnion*, 594 U.S. at 435.

As an initial matter, plaintiffs' broad assertion that the rule threatens their ability to operate as independent contractors is entirely unfounded in light of what the 2024 Rule actually says. As the Department explained, the 2024 Rule "is not intended to disrupt the businesses of independent contractors who are, as a matter of economic reality, in business for themselves." 89 Fed. Reg. at 1638. The rule instead provides

guidance "for those businesses that engage (or wish to engage) independent contractors as well as for those who wish to work as independent contractors" as to how the Department will classify workers under the FLSA in the event of enforcement action. *Id.* Moreover, that guidance is "derived from the same analysis that courts"—including this Court—"have applied for decades and have been continuing to apply since the [2021 Rule] took effect." *Id.* at 1658; *see also Scantland*, 721 F.3d at 1312 & n.2.

In other words, as the district court found, "[b]y definition, the 2024 Rule's fact-specific approach cannot pose a realistic danger to Plaintiffs' ability to operate as independent contractors." App. 042. If plaintiffs have previously been properly classified as independent contractors (and there is no suggestion that they have been misclassified), then the 2024 Rule should have no change on their classification. Notably, none of the four plaintiffs have identified a single previous working relationship that has been reclassified or that they believe will be reclassified as an employer/employee relationship under the test articulated in the 2024 Rule. Nor have plaintiffs alleged any intent or desire to enter into a working arrangement that would render them economically dependent on putative clients in a manner that is likely to result in them being classified as employees under the 2024 Rule.

At best, plaintiffs have demonstrated that the 2024 Rule's fact-specific nature means that the Department may one day determine that *some* workers who call themselves independent contractors are actually employees entitled to the protections

of the FLSA based on how those workers have chosen to structure their working arrangements. But the fact that *some* other workers may, at some point in the future, be classified as employees is based on their specific factual circumstances is not enough to show that *plaintiffs* face a "substantial likelihood of future injury that is 'real and immediate,' 'actual and imminent,' and not 'conjectural' or 'hypothetical.'" *Corbett*, 930 F.3d at 1236 (quoting *Lujan*, 504 U.S. at 560) (emphasis omitted). Thus, as the district court properly concluded, the mere possibility that plaintiffs could be considered employees under some entirely hypothetical and as-yet-unspecified future circumstances is entirely insufficient to show that harm is "certainly impending." App. 041-042.

**3.** Before the district court, plaintiffs based their standing theory primarily on their contention that the 2024 Rule's fact-specific nature provides comparatively less certainty than the now-rescinded 2021 Rule regarding how the Department of Labor will classify workers. App. 017-019. Plaintiffs asserted that this uncertainty would have a chilling effect that will result in lost business due to their clients' "uncertainty or fear of liability risks under the Department's new rule." App. 018; *see also* App. 098; App. 103; App. 108; App. 111. The district court properly rejected this theory of standing, which is based entirely on plaintiffs' subjective fears and speculation about how third parties will respond to the rule.

As the Supreme Court made clear in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), premising standing on a fear of possible injury at some unspecified

point in the future is "inconsistent with [the] requirement that 'threatened injury must be certainly impending.'" *Id.* at 410 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). That is particularly true where, as here, plaintiffs' threatened injury (in the form of lost business opportunities) hinges upon speculation about the independent actions of third parties (their current and future clients). *Id.* at 410, 414-15 & n.5. That is because "the courts cannot presume either to control or predict" the motivations behind the "unfettered choices made by independent actors not before the courts." *Lujan*, 504 U.S. at 562 (quotations omitted).

In such circumstances, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562. Mere "[a]llegations of a subjective 'chill' are not an adequate substitute for" standing. *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *Clapper*, 568 U.S. at 419-20; *see also Colt & Joe Trucking, LLC v. U.S. Department of Labor*, No. 24-cv-00391, 2025 WL 56658 (D.N.M. Jan. 9, 2025) (rejecting similar claim that plaintiff's "uncertainty" regarding how the 2024 Rule would be applied supported standing); *Littman v. U.S. Department of Labor*, No. 3:24-cv-00194, 2025 WL 763583 (M.D. Tenn. Mar. 11, 2025) (same); *cf. Frisard's Transp., LLC v. Department of Labor*, No. 2:24-cv-00347, Minute Entry (E.D. La. Mar. 8, 2024) (denying emergency relief regarding the 2024 Rule and finding "no immediate threat of harm or immediate harm"), *appeal pending*, No. 24-30223 (5th Cir.).

Plaintiffs here have not adduced any evidence or argument demonstrating that any potential lost business is fairly traceable to the rule or redressable in this litigation. In declarations submitted in district court, two plaintiffs alleged only that they "have good reason to believe" they "will" lose business as a result of the rule. App. 098; App. 111. Those declarations provide no specific facts or evidence supporting plaintiffs' conclusory statement about possible lost business in the future. The remaining two plaintiffs assert that they have already lost opportunities for projects, App. 103; App. 108, but likewise provide no details about these lost opportunities. Given the lack of specifics, there is no evidentiary basis (other than plaintiffs' hearsay assertions regarding their clients' motives) to conclude that any lost business was the direct result of the rule, as opposed to other reasons unrelated to the rule. *See also Littman*, 2025 WL 763583, at *7 ("Generally, courts refuse to 'endorse standing theories that rest on speculation about the decisions of independent actors, particularly speculation about future unlawful conduct." (quoting *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019)).

On appeal, plaintiffs make no effort to correct for this failure. Instead, plaintiffs assert that lost business is the "predictable effect" of the 2024 Rule on the decisions of their clients. Br. 21-23. In support of this, plaintiffs repeat their broad and implausible claim that compliance with the 2024 Rule's fact-specific test is "nearly impossible" in comparison to the 2021 Rule, and that businesses who use independent contracts will have to "reduce usage and put constraints on their existing

contractors" to avoid liability in the event of a future enforcement action. Br. 23. As already established, however, plaintiffs have not introduced any evidence suggesting that they either have been or likely will be classified as employees under the 2024 Rule. Nor have they alleged any desire to enter into a working arrangement that would render them economically dependent on a putative client in a manner likely be classified as an employee/employer relationship under the 2024 Rule. Thus, even assuming plaintiffs' clients in fact fear that plaintiffs will one day be classified as employees, plaintiffs have not shown that this alleged chilling effect of plaintiffs' business is anything more than the type of "subjective apprehension" about potential future government actions that the Supreme Court has held entirely insufficient to support a claim of standing. *Clapper*, 568 U.S. at 418; *Laird*, 408 U.S. at 13-14 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" fairly traceable to the challenged action.); *Colt & Joe Trucking*, 2025 WL 56658, at *6 ("Merely alleging that a regulation creates a chilling effect is not sufficient to give rise to standing. . . . [T]here must be a credible threat of enforcement for the avoidance actions to give rise to standing.").

Moreover, plaintiffs' claim that the rule somehow prohibits them from working as independent contractors is implausible given that they operated for years as independent contractors prior to the 2021 Rule, without any apparent injury. As the Department explained in the 2024 Rule, "workers properly classified as independent

contractors prior to the [2021 Rule] will likely continue to be properly classified as independent contractors under" the 2024 Rule, and the 2024 Rule will not "cause workers who have long been properly classified as independent contractors . . . to improperly lose their independent status." 89 Fed. Reg. at 1658-59 (alteration in original). And tellingly, despite plaintiffs' claim that the certainty provided by the 2021 Rule changed business's incentives, plaintiffs identify no evidence that plaintiffs' clients changed their practices in ways favorable to plaintiffs (or at all) after the 2021 Rule was promulgated, or that those clients have now reversed those changes in light of the 2024 Rule. This further underscores the tenuous connection between the 2024 Rule and plaintiffs' assertions of harm.

**B. 1.** Plaintiffs assert that they have standing because, in their view, they are the "object" of the regulation. Br. 16-20. But this argument—even if it were well-founded—does not absolve plaintiffs of their failure to demonstrate injury, traceability, and redressability. Although there may "ordinarily" be "little question" that the objects of a regulation have standing, *Lujan*, 504 U.S. at 561-62, that is because in a typical case where a regulation *requires* a party to do (or not do) something, the necessary elements of injury, traceability, and redressability are typically clear on the face of the pleadings and the regulation at issue. That does not mean that regulated entities *automatically* have standing; they must still satisfy their burden to demonstrate the necessary elements of standing. *See Littman*, 2025 WL 763583, at *5 (concluding that freelancers are not the "object" of the 2024 Rule,

because the rule does not directly regulate "what professional business status Plaintiffs choose to do business," and that in any event, "it is well-settled that the object of a challenged governmental action must still establish an injury in fact and show that the challenged action both causes the injury and would be redressed through a favorable judgment to have standing" (quotations omitted)).

Moreover, as discussed, the 2024 Rule does not *require* plaintiffs (or any other party) to do anything. Rather, the rule merely provides the Department's interpretation of the FLSA. It is the statute—not the rule—that imposes minimum wage and overtime pay (among other) requirements. And those statutory requirements are imposed on employers, not workers. 29 U.S.C. §§ 206(a), 207(a). Indeed, plaintiffs' own allegations confirm that they do not qualify as objects of the 2024 Rule. As discussed, the crux of plaintiffs' standing theory is that the 2024 Rule increases their clients' risk of liability, and that they fear these clients will cease to work with them. This demonstrates that plaintiffs' "asserted injury arises from the government's allegedly unlawful regulation . . . of someone else." *Lujan*, 504 U.S. at 562 (emphasis omitted). Plaintiffs identify no specific provisions in the rule—and there are none—that require them to personally take (or not take) any specific action. *See also Littman*, 2025 WL 763583, at *5.

Plaintiffs suggest (Br. 17) that the 2024 Rule "regulate[s] their interest in their freedom to contract and govern their conduct in those contracts." That is inaccurate. As discussed, the rule does not disrupt existing contractual relationships; plaintiffs

remain free to contract with clients as they choose. The rule simply "provid[es] employers with guidance" as to how the Department will classify workers in the event of enforcement proceedings. 89 Fed. Reg. at 1727. Because the rule does not require plaintiffs (or anyone else) to do anything, plaintiffs cannot satisfy the necessary elements of standing merely by pointing to the rule's existence.

**2.** Plaintiffs fare no better in arguing that they have demonstrated standing because their declarations show that they have undertaken efforts "to remain independent and protect themselves from liability." Br. 19. Notably, two of the cited declarations do not actually say that plaintiffs have made changes to their businesses. Instead, they state that plaintiffs have reviewed the rule and "anticipate" that they will "continue to consider making changes to [their] business practices" in order to remain independent contractors. *E.g.* App. 100, 103. But merely deciding to read a rule does not confer Article III standing to challenge it, particularly not where, as here, its analysis reflects longstanding judicial precedent. *See* 89 Fed. Reg. at 1733. Moreover, plaintiffs' suggestion that they may decide to alter their business practices at some point in the future entirely fails to demonstrate any actual or certainly impending injury to themselves.

The other two plaintiffs state that they have had to "renegotiate" two contracts to protect clients from liability, App. 108, and have shifted work more toward ghostwriting, App. 111. Plaintiff Singer also states that she has hired freelancers in the past but has suspended that practice to avoid liability under the 2024 Rule. App.

112.  As noted, however, nothing in the 2024 Rule actually *requires* plaintiffs to take these steps, nor have they shown that these actions are reasonably necessary to avoid some objective risk that they will be classified as employees.  Indeed, plaintiffs' declarations do not contain any specific facts about their existing contracts or working relationships to support their speculation that these changes were likely necessary to maintain their status as independent contractors.  Plaintiffs do not identify, for example, what terms in their prior contracts they believe would lead to their classification as employees under the 2024 Rule or else provide any explanation as to why they believed changes were necessary in order to avoid being classified as an employee under the 2024 Rule's fact-specific test.  Similarly, Ms. Singer does not provide any details about her prior arrangements (in which the freelancers were previously classified as independent contractors) either have been or would likely be affected by the 2024 Rule's fact-specific test.  Plaintiffs thus have not substantiated their claims that these changes are fairly traceable to the 2024 Rule.

In this regard, plaintiffs' alleged injury parallels the claim the Supreme Court found insufficient to establish standing in *Clapper*, where the plaintiffs challenged a statute establishing procedures to authorize foreign surveillance, asserting that there was an "objectively reasonable likelihood" that they would be subject to this surveillance based on their extensive contacts with foreign nationals, and also asserting that they had incurred certain reasonable costs to avoid that objective risk. 568 U.S. at 401, 410.  The Court rejected plaintiffs' probabilistic approach to standing

and stressed that the costs they had incurred to avoid surveillance also could not

support a claim of imminent injury.  *Id.* at 422.

As the Court explained, the *Clapper* plaintiffs' theory of future harm was that

their communications with foreign nationals would be intercepted at some point in

the future.  568 U.S. at 410.  But that theory depended entirely upon an "attenuated

chain of inferences" involving the "unfettered choices made by independent actors

not before the court," *id.* at 414 n.5—*i.e.* that the government would target

communications to which the plaintiffs were parties and that a court would authorize

such surveillance, *id.* at 413-14.  Because that harm was not "certainly impending," the

costs that plaintiffs "incurred to avoid surveillance are simply the product of their

[subjective] fear," rather than the challenged government action.  *Id.* at 417.

Accordingly, the Court determined that plaintiffs could not "manufacture standing by

choosing to make expenditures" to avoid this hypothetical future harm.  *Id.* at 402.

Here, plaintiffs' theory of future harm here is even more attenuated than in

*Clapper*.  As discussed, plaintiffs' theory of injury is based purely upon "uncertainty"

about how the Department will analyze the specific circumstances of their working

arrangements in the event the Department chooses to bring an enforcement action

against one of plaintiffs' clients.  But plaintiffs have identified no basis to conclude

that any of their working arrangements have been improperly classified or will likely

be determined to be improperly classified should that ever occur.  Plaintiffs thus have

not demonstrated that they face a threat of certainly impending reclassification under

the rule; their speculative fear of possibly being determined to have been misclassified at some point in the indefinite future is not sufficient to show that harm is certainly impending. *See Clapper*, 568 U.S. at 410; *see also Corbett*, 930 F.3d at 1237, 1239 (holding that a frequent flyer's claim that he *might* "hav[e] to undergo mandatory AIT screening at some indeterminate time" insufficient to demonstrate a "certainly impending" injury in fact).

Furthermore, because plaintiffs have not shown a substantial risk of such future harm, they cannot demonstrate that the efforts described in their declarations are actually traceable to the rule. Rather, they are "simply the product of their [subjective] fears," *Clapper*, 568 U.S. at 417—not the rule itself. Indeed, as in *Clapper*, plaintiffs have long had a "similar incentive to engage in many of the countermeasures that they are now taking." *Id.* For example, plaintiffs note that they currently evaluate every contract to ensure that they operate sufficiently independently to remain independent contractors, rather than employees. Br. 20; App. 098; App. 103. But as noted, the fact-specific guidance about which plaintiffs complain has its origins in the fact-specific test that courts have used (and continue to use) for decades. It is thus difficult to see how any review of plaintiffs' contracts to ensure their independence can be fairly traced to the 2024 Rule. That is entirely insufficient to support standing. *See Clapper*, 568 U.S. at 414, 417; *see also Corbett*, 930 F.3d at 1239 (reasoning that parties "cannot manufacture standing merely by inflicting harm on themselves based

on their fears of hypothetical future harm that is not certainly impending" (quotations omitted)).

## II. Any Questions on the Merits Should Be Remanded to the District Court to Determine in the First Instance

Because plaintiffs lack standing, this Court should affirm. If this Court disagrees, however, the government respectfully requests that the Court remand any questions on the merits to the district court where they may be addressed in the first instance.

Due to the change in administration on January 20, 2025, there is new Department of Labor leadership. Currently pending before this Court is a motion to extend the time to file this brief so that the Department of Labor's new leadership has sufficient time to familiarize themselves with the issues in this case and determine, *inter alia*, their position regarding the merits and whether to initiate new rulemaking to reconsider the rule. As a result, the government is not currently in a position to brief the merits of plaintiffs' challenge to the rule. As of the time of this filing, this Court has not acted on the government's extension motion.

In addition, as noted in the government's abeyance motion filed earlier this morning, April 4, 2025, the Department of Labor has determined that it intends to reconsider the rule at issue in this litigation, including whether to issue a notice of proposed rulemaking rescinding the regulation. Accordingly, the government respectfully requests that, if this Court reverses the district court's judgment on

standing, that it remand any issues on the merits to be addressed by the district court in the first instance.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

MICHAEL S. RAAB

*s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*
*Jennifer.l.utrecht@usdoj.gov*

April 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,762 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.


*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht